# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DISTRICT NO. 1, PACIFIC COAST DISTRICT, MARINE ENGINEERS' BENEFICIAL ASSOCIATION, AFL-CIO, | ) ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 13-cv-1034 (KBJ) |
| AMERICAN MARITIME OFFICERS, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Plaintiff District No. 1, Pacific Coast District, Marine Engineers' Beneficial Association, AFL-CIO ("MEBA") and Defendant American Maritime Officers ("AMO") are rival labor unions that represent maritime industry employees who are stationed at ports throughout the United States and on oceangoing vessels. Both MEBA and AMO are affiliated with the AFL-CIO; their dispute in the instant case arises out of a collective bargaining relationship that MEBA had with a third party, gone bad.

Specifically, until 2011, MEBA had a long-standing collective bargaining agreement with Liberty Maritime Corp. ("Liberty"), a shipping management company that had employed MEBA-represented individuals aboard its tanker and bulk carrier vessels for more than twenty years pursuant to successive labor contracts. That relationship soured when labor negotiations between MEBA and Liberty that took place in the fall of 2011 failed to produce a successor contract for the first time since 1988.

Liberty immediately entered into a new collective bargaining agreement with AMO; indeed, according to MEBA, Liberty and AMO had secretly and improperly met and bargained while the contract negotiations between Liberty and MEBA were still underway, and it was this secret meeting that caused the ongoing successor-contract negotiations to fail.  To vindicate what MEBA contends was tortious conduct on AMO's part, MEBA filed the instant lawsuit against AMO in the Superior Court of the District of Columbia, claiming intentional interference with a prospective business advantage (Count I) and unjust enrichment (Count II).  (*See* Compl. for Intentional Interference with Prospective Bus. Advantage & Unjust Enrichment ("Compl."), ECF No. 3-1, at 5-19, ¶¶ 3, 37-43.)[1]  AMO then removed the case to federal court (*see* Defs.' Notice of Removal, ECF No. 1, ¶¶ 7-9), contending that section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, preempts MEBA's common law claims insofar as resolution of MEBA's claims requires interpretation of certain labor agreements under federal law (*see* Notice of Removal, ¶¶ 7-9).

Before this Court at present are two motions:  (1) MEBA's motion to remand this matter to Superior Court (Pl.'s Mot. to Remand & Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Mot."), ECF No. 7), and (2) AMO's motion to dismiss MEBA's complaint (Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 4).  With respect to remand, MEBA maintains that there is no federal question jurisdiction—and, thus, that removal was improper—because a state court could resolve MEBA's common law claims without analyzing or interpreting any labor contracts.  (*See* Pl.'s Mem. in Supp. of Pl.'s Mot. ("Pl.'s Br."), ECF No. 7-1, at 1-3.)  AMO responds that resolution of MEBA's common

---

[1] Page numbers throughout this Opinion refer to those assigned by the Court's electronic filing system.

law claims requires interpreting both the AFL-CIO constitution and MEBA's collective bargaining agreement with Liberty in a manner that triggers section 301's preemptive effect and bestows federal question jurisdiction upon this Court.  (*See* Notice of Removal ¶ 9; Defs.' Opp'n to Pl.'s Mot. ("Defs.' Opp'n"), ECF No. 9, at 1-3.)  In addition, AMO maintains that MEBA's complaint must be dismissed, first, because the AFL-CIO constitution requires affiliates to engage in arbitration as the exclusive method of resolving inter-union disputes, and second, because MEBA's state law claims lack federal labor law analogues.  (Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Br."), ECF No. 4-1, at 1-2.)

After consideration of the parties' briefs and the applicable law, this Court finds that this case was properly removed to federal court under 28 U.S.C. § 1441 because interpretation of the AFL-CIO constitution under federal labor law is required in order to address MEBA's common law claims.  Furthermore, because MEBA has agreed to binding arbitration as the exclusive method of resolving inter-union disputes under the AFL-CIO constitution yet has failed to exhaust those procedures in this case, this Court concludes that MEBA cannot maintain the instant lawsuit.  Consequently, MEBA's motion to remand is **DENIED**, and AMO's motion to dismiss MEBA's complaint, as converted to a motion for summary judgment herein, is **GRANTED**.  A separate order consistent with this memorandum opinion will follow.

## I. BACKGROUND

### A.    Factual Background

MEBA and AMO are labor organizations that represent licensed deck and engineering officers in the U.S. maritime industry.  (*See* Compl. ¶¶ 1-2; Notice of Removal ¶ 1.)  Both unions are affiliated with the AFL-CIO.  (Notice of Removal ¶ 1.)

According to the complaint, Liberty has traditionally used MEBA-represented employees on its vessels pursuant to a series of collective bargaining agreements that began with Liberty's formation in 1988.  (Compl. ¶ 7.)  On August 25, 2010, MEBA entered into a Memorandum of Understanding ("MOU") with Liberty that extended the existing collective bargaining agreement ("CBA") for one year—until September 30, 2011—and that also provided for negotiations in the event that either party sought to amend the CBA.  (*Id.* ¶¶ 9-10.)  In this regard, the MOU contained the following statement:

> In the event either the Company or the Union serves notice to amend the Agreement, the terms of the Agreement in effect at that time of the notice to amend shall continue in effect until mutual agreement on the proposed amendments or an impasse has been reached.

(*Id.* ¶ 10.)  MEBA alleges that it provided Liberty with timely notice of its desire to amend the agreement on July 8, 2011, and that, thereafter, MEBA and Liberty began negotiating the terms of a successor contract.  (*Id.* ¶¶ 11-13.)

It is undisputed that the subsequent negotiations between MEBA and Liberty focused on Liberty's request that MEBA transition from a "defined benefit plan" to a "defined contribution plan," and also various other operational issues that the parties referred to as the "20 points."  (*Id.* ¶¶ 15-16.)[2]  MEBA alleges that, while it was negotiating with Liberty over these terms, AMO's National President Thomas Bethel and Assistant Vice President Daniel Shea (referred to herein collectively with the union

---

[2] "A defined-benefit plan, 'as its name implies, is one where the employee, upon retirement, is entitled to a fixed periodic payment.'"  *Beck v. PACE Int'l Union*, 551 U.S. 96, 98 (quoting *Commissioner v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 154 (1993)).  "A defined contribution plan[,]" by contrast, "is one where employees and employers may contribute to the plan, and 'the employer's contribution is fixed and the employee receives whatever level of benefits the amount contributed on his behalf will provide.'"  *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999) (quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 364 n.5 (1980)) (internal quotation marks omitted).

as "AMO")—who were aware of the ongoing negotiations—attended a secret meeting with Liberty representatives.  (*Id.* ¶ 17, 19.)  According to the complaint, during that meeting in August of 2011, Bethel and Shea made clear to Liberty that AMO would readily accept the terms that Liberty was demanding of MEBA—that is, the defined contribution plan and the 20 points.  (*Id.* ¶¶ 20-21.)  MEBA further alleges that AMO and Liberty reached "an agreement in principal [sic]" at the close of the meeting to enter into a new collective bargaining agreement together (*id.* ¶ 22), and that both AMO and Liberty concealed their meeting and agreement from MEBA (*id.* ¶ 19 ("Neither Liberty nor AMO disclosed to the MEBA that they were meeting and negotiating for a CBA[.]"); *id.* ¶ 24 ("[T]he AMO defendants and Liberty acted to conceal their meeting and agreement on a CBA.")).  Moreover, according to the complaint, although Liberty resumed negotiations with MEBA after its meeting with AMO, Liberty thereafter "refused to alter its bargaining position with MEBA," and "took an 'all or nothing' approach that made it much more difficult for the parties to make progress in their negotiations."  (*Id.* ¶ 26.)

Eventually, MEBA realized that Liberty was not budging "and that the parties would not reach a successor agreement unless the Union reevaluated its position."  (*Id.* ¶ 28.)  On September 28, 2011, with little time left to act before expiration of the MOU's September 30th extension period, MEBA purportedly informed Liberty that it would agree to both a defined contribution plan and Liberty's recent economic proposals, and requested that MEBA and Liberty return to the bargaining table to conclude negotiations on the 20 points and to finalize a successor agreement.  (*Id.* ¶¶ 29-30.)  MEBA alleges that, in response, Liberty "stated that it was 'too late'" (*id.*

¶ 31), and then refused to negotiate further (*id.* ¶ 32).  This refusal, according to MEBA, was based on the fact that Liberty had already "called AMO to confirm their agreement in principal [sic]" and had begun making plans for "AMO represented personnel to take the place of MEBA represented personnel" aboard Liberty's ships. (*Id.* ¶ 33.)  Consequently, MEBA alleges, when the clock struck midnight on October 1, 2011, AMO members began staffing Liberty's vessels, leaving MEBA members high and dry.  (*Id.* ¶¶ 35-36.)

### B.   Procedural History

On June 12, 2013, MEBA filed the instant two-count complaint against AMO in D.C. Superior Court.  (*See id.* at 5; Notice of Removal ¶ 1.)  Count I alleges that AMO "intentionally interfered with" MEBA's contractual relationship with Liberty when it wrongfully induced Liberty to "breach its labor contract with MEBA" and to "end good faith bargaining between Liberty and MEBA" through improper "conduct, communications and contact" with Liberty, "including its August, 2011 meeting[.]" (Compl. ¶ 39.)  Count II alleges that AMO has been unjustly enriched by "financial payments and other benefits" from Liberty because, absent AMO's interference, MEBA would have received those benefits.  (*Id.* ¶ 42.)  Accordingly, MEBA's complaint— which sounds in tort law—seeks compensatory and punitive damages against AMO. (*Id.* at 18, ¶ 5.)[3]

AMO removed this action to federal court on July 8, 2013, pursuant to 28 U.S.C. § 1441, arguing that, under section 301 of the LMRA, this Court has federal question

---

[3] MEBA also filed a separate lawsuit against Liberty in federal court to compel arbitration of certain grievances arising from the failed negotiations.  That case, too, was before this Court.  *See Dist. No. 1, Pacific Coast Dist., Marine Eng'rs' Beneficial Ass'n v. Liberty Mar. Corp.*, No. 11-1795, 2014 WL 4851874 at *1 (D.D.C. Sept. 30, 2014).

jurisdiction over MEBA's asserted state common law claims. (*See* Notice of Removal at 1-2 & ¶¶ 7-9.) One week later, on July 15, 2013, AMO moved to dismiss the complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Defs.' Mot. at 1.) Specifically, AMO argues that because both parties are AFL-CIO affiliates, the AFL-CIO constitution requires that AMO and MEBA resolve the instant dispute in a mandatory arbitration procedure, not in federal or state court. (*See* Defs.' Br. at 14-17.) AMO also contends that the complaint fails to state a claim upon which relief can be granted because section 301 completely preempts MEBA's state law action and there are no federal labor law analogues to MEBA's particular state law claims. (*See id.* at 1, 11-13.)

Meanwhile, MEBA filed a motion to remand this case back to D.C. Superior Court. (*See* Pl.'s Mot.) MEBA insists that section 301 does not preempt its state law claims because neither count of MEBA's complaint requires interpretation or analysis of any labor agreements under federal law. (Pl.'s Br. at 1-2, 11-20.) Consequently, according to MEBA, this Court lacks jurisdiction and must send the instant case back to Superior Court. (*Id.* at 2-3.)

## II. PLAINTIFF'S MOTION TO REMAND

Before this Court can address AMO's dismissal arguments, it must first consider whether federal question jurisdiction exists in this case under LMRA section 301—in which case this matter was properly removed—or whether the instant case must be remanded back to Superior Court for lack of subject matter jurisdiction. *See, e.g.*, *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 126 (D.D.C. 2013) (addressing plaintiff's motion to remand for lack of subject matter jurisdiction before considering defendant's motion to dismiss for failure to state a claim); *Greene v. Am. Fed'n of*

*Gov't Emps.*, No. 05-0408, 2005 WL 3275903, at *1 & n.1 (D.D.C. Sept. 7, 2005)

(addressing plaintiff's motion to remand for lack of subject matter jurisdiction before

considering defendant's motion to dismiss for lack of subject matter jurisdiction (citing

*Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999)).  For the

reasons that follow, this Court concludes that section 301 completely preempts MEBA's

state law claims under the circumstances presented here and, thus, that removal was

proper.

### A.  Applicable Legal Standard

A defendant may remove a state court action to federal court only if the action

could have been filed in federal court in the first instance.  28 U.S.C. § 1441(a); *see

also Wash. Consulting Grp., Inc. v. Raytheon Technical Servs. Co.*, 760 F. Supp. 2d 94,

99 (D.D.C. 2011) (citing *Wexler v. United Air Lines, Inc.*, 496 F. Supp. 2d 150, 152

(D.D.C. 2007)).  "Courts must strictly construe removal statutes, resolving any

ambiguities regarding the existence of removal jurisdiction in favor of remand." *Busby*,

932 F. Supp. 2d at 127.  Where, as here, a plaintiff moves to remand its action back to

state court, "[t]he removing party bears the burden of showing that federal subject

matter jurisdiction exists." *Wexler*, 496 F. Supp. 2d at 152 (citation omitted).

There are several bases for original subject matter jurisdiction in federal courts,

including federal question jurisdiction under section 1331 of title 28 of the U.S. code,

which grants federal district courts jurisdiction over "all civil actions arising under the

Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "The presence

or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint

rule,' which provides that federal jurisdiction exists only when a federal question is

presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v.*

*Williams*, 482 U.S. 386, 392 (1987).  When a plaintiff's cause of action lies in state law, "the court must determine whether the adjudication of those state law claims requires resolution of a substantial question of a federal law, because the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Harding-Wright v. Dist. of Columbia Water & Sewer Auth.*, 350 F. Supp. 2d 102, 104-105 (D.D.C. 2005) (internal quotation marks and citations omitted). Ordinarily, "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393 (emphasis in original) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 12 (1983)).

However, there is a caveat to the well-pleaded complaint rule with respect to an anticipated preemption defense:  the Supreme Court has recognized that "'when a federal statute wholly displaces the state-law cause of action through complete pre-emption,' the state claim can be removed." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)).  In other words, "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987).  "Under this principle, the preemptive force of a statute can be so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Heintzman v. Amalgamated Transit Union Int'l*, 825 F. Supp. 2d 161, 166

(D.D.C. 2011) (quoting *Metro. Life Ins. Co.*, 481 U.S. at 65); *see also Beneficial Nat'l Bank*, 539 U.S. at 8 ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.").

**B.     Removal Was Proper Because Section 301 Completely Preempts MEBA's State Law Claims**

The jurisdictional issue in the instant case turns on the reach of federal labor law, and in particular, the preemptive effect of section 301 of the LMRA.  That statute grants federal courts jurisdiction over lawsuits alleging labor contract violations, and specifically provides that

> [s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  The Supreme Court has acknowledged that section 301 "not only provides federal-court jurisdiction over controversies involving collective-bargaining agreements, but also 'authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements.'"  *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988) (quoting *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 451 (1957)); *see also Lincoln Mills*, 353 U.S. at 456 ("[T]he substantive law to apply in suits under s[ection] 301(a) is federal law, which the courts must fashion from the policy of our national labor laws.").  Moreover, the Supreme Court has held that "the preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'"  *Franchise Tax Bd.*, 463 U.S. at 23.  This means that, for the purpose of

the well-pleaded complaint rule, section 301 is one of the rare federal statutes that "completely preempt[s] state law." *Heintzman*, 825 F. Supp. 2d at 166 (citing *Metro. Life Ins. Co.*, 481 U.S. at 64).

As relevant here, section 301's preemptive effect extends to state law claims if resolution of those claims "requires the interpretation of a collective-bargaining agreement[,]" *Lingle*, 486 U.S. at 413, or "is substantially dependent upon analysis of the terms of [a labor] agreement[,]" *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). Furthermore, courts have recognized that international "[u]nion constitutions are 'contracts' within the meaning of section 301(a)[.]" *Laborers' Int'l Union v. Nat'l Post Office Mail Handlers, Watchmen, Messengers & Group Leaders Div.*, 880 F.2d 1388, 1395 (D.C. Cir. 1989) (citing *United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. v. Local 334*, 452 U.S. 615 (1981)); *see also Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 98-100 (1991); *Heintzman*, 825 F. Supp. 2d at 166. Thus, whether or not this Court has subject matter jurisdiction over MEBA's common law claims such that AMO was entitled to remove MEBA's action depends on whether resolving MEBA's claims requires interpreting or relying upon any labor agreement, including the AFL-CIO constitution.

MEBA's motion to remand argues that the two state common law claims that MEBA has brought in this action "do not require the Court to interpret a collective bargaining agreement" and "are independent of any rights arising under a labor contract"; therefore, "this Court does not have jurisdiction to adjudicate these claims." (Pl.'s Mot. at 1, 2.)[4] AMO responds that, at the very least, MEBA's state law claims

---

[4] For example, MEBA steadfastly maintains that its first cause of action is a claim for tortious interference with a *prospective* business advantage and *not* a claim for tortious interference with a

trigger the complete preemptive effect of section 301 due to the fact that MEBA has chosen *to file a lawsuit* with respect to this dispute rather than proceed to arbitration. In this regard, AMO points to the AFL-CIO constitution, and argues, first, that MEBA has agreed to arbitrate (and *not* to litigate) the instant dispute under the express terms of that charter, and second, that any court's resolution of this argument would necessarily require consideration and interpretation of the AFL-CIO constitution such that the preemptive effect of section 301 is triggered.  (*See* Defs.' Opp'n at 14-16; *see also id.* at 14 ("[T]he existence of a mandatory and exclusive dispute-resolution procedure in the AFL-CIO Constitution is not merely a defense; it is an independent basis for § 301 preemption.").)  Put another way, according to AMO, however successful MEBA may have been in crafting a complaint that itself raises only state law causes of action, MEBA has not—and cannot—avoid having a court determine the extent of MEBA's obligations under Article XX of the AFL-CIO constitution, which governs disputes between AFL-CIO affiliates and appears to require mandatory arbitration as "the sole and exclusive method for settlement and determination" of disputes such as the one between the parties here.  (*Id.* at 15.)

This Court agrees.  As explained above, it is well established that any state law claim or defense that requires interpretation of federal labor contracts—including international union constitutions—implicates the preemptive effect of section 301 of the LMRA.  Thus, so long as consideration of MEBA's complaint or any of AMO's

---

contractual relationship, which would necessarily require interpretation of the CBA between MEBA and Liberty.  (*See* Pl.'s Reply Mem. in Supp. of Pl.'s Mot., ECF No. 11, at 2 ("AMO defendants repeatedly (and wrongly) assert that MEBA's intentional interference with prospective business advantage claim must be viewed instead as an intentional interference with contract claim—a cause of action that (unlike the claims brought by MEBA) requires a finding of breach of contract and, therefore, requires interpretation of a labor contract.").)

defenses would require interpretation of the text of the union's constitution, this Court has subject matter jurisdiction over MEBA's claims.  Moreover, federal labor policy supports finding preemption in order to ensure "that the purposes animating § 301" will not be frustrated "by parties' efforts to renege on their arbitration promises by 'relabeling' as tort suits actions simply alleging breaches of duties assumed in [federal labor contracts.]"  *Lividas v. Bradshaw*, 512 U.S. 107, 122-123 (1994); *cf. Allis-Chalmers Corp.*, 471 U.S. at 219 ("A [preemption] rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness[.]" (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653 (1965))).  Under the circumstances presented here and notwithstanding the fact that MEBA's complaint directly raises only state law tort claims, this action clearly presents the substantial threshold question of whether MEBA is entitled to file suit against AMO in a court of law (state or federal) at all, or, alternatively, whether "both MEBA and AMO bound themselves" to arbitrate inter-union disputes "by affiliating with the AFL-CIO."  (Defs.' Opp'n at 15.)  And because answering *that* question necessarily would require a court to consult and interpret the text of the AFL-CIO's constitution, this Court finds that section 301's complete preemptive effect is triggered.  *See, e.g.*, *Heintzman*, 825 F. Supp. 2d at 166-168 (denying motion to remand where plaintiff's state law claims required interpretation of international union constitution).

MEBA's arguments to the contrary are unconvincing.  First, MEBA explains that the well-pleaded complaint rule prevents AMO from relying on a preemption defense to establish federal question jurisdiction.  (Pl.'s Br. at 19; *see also id.* at 1-2 ("[A] defendant cannot transform a state law action into one arising under federal law merely

by asserting a defense that seeks to raise a federal question.").) MEBA is correct that "even an 'obvious' pre-emption defense does not, in most cases, create removal jurisdiction." *Metro. Life Ins. Co.*, 481 U.S. at 66. But this is not "most cases[.]" *Id.* As explained above, to the extent that MEBA's state law claims require, or depend upon, interpretation of a labor contract, this case falls under a rare exception to the well-pleaded complaint rule because "[s]ection 301 of the LMRA is one of the few federal statutes that the Supreme Court has found to completely preempt state law" under those circumstances. *Heintzman*, 825 F. Supp. 2d at 166 (citing *id.* at 64). Moreover, given that the AFL-CIO constitution is a labor contract that contains a mandatory arbitration provision, this Court concludes that resolution of MEBA's state law claims necessarily depends upon interpreting that contract to decide whether or not MEBA is required to arbitrate its claims—an issue that the Court addresses below. (*See infra* section III.B.)

MEBA also argues that AMO's reliance on the AFL-CIO constitution's internal dispute resolution provision is "disingenuous" because, according to MEBA, AMO "conveniently ignored" these same constitutional provisions when it previously litigated a similar action against MEBA in Ohio. (Pl.'s Br. at 20.) Apparently, in an unrelated (but parallel) dispute, AMO sued MEBA in Ohio state court for alleged unjust enrichment and tortious interference with AMO's contractual relationship with Interlake Steamship Co. *See Am. Mar. Officers v. Marine Eng'rs Beneficial Ass'n, Dist. I*, 2006 WL 2474969 at *1 (N.D. Ohio Aug. 25, 2006), *appeal dismissed*, 503 F.3d 532 (6th Cir. 2007). That case involved an ironic reversal of the parties' current litigating positions: MEBA had removed the case to federal court on the grounds of section 301

preemption—specifically, that resolution of AMO's state law claims required interpreting AMO's CBA with Interlake—and AMO argued that removal was improper. *Id.*[5] Ultimately, the United States District Court for the Northern District of Ohio found that resolution of AMO's state law claims did not require interpretation of AMO's CBA with Interlake, and accordingly, the court granted AMO's motion to remand the case to state court. *Id.* at *1-3.

Now, MEBA argues that AMO should not be heard here to invoke Article XX of the AFL-CIO constitution to prevent remand in the instant case, given that AMO filed suit against MEBA and successfully argued *for* remand in the Ohio case. (Pl.'s Br. at 20.) But this Court finds that MEBA's argument is not well founded for one very simple reason (a reason that AMO points out and MEBA does not contest): "AMO was *not* affiliated with the AFL-CIO during the relevant time period" for the Ohio case, and thus "could not have invoked Article XX to resolve that dispute" even if it had wanted to. (Defs.' Opp'n at 16-17 n.7 (emphasis added).) Consequently, MEBA has failed to undercut AMO's arguments for removal with respect to the AFL-CIO constitution, and this Court finds that AMO has met its burden of demonstrating removal jurisdiction.[6]

## III.   DEFENDANTS' MOTION TO DISMISS

Satisfied that removal jurisdiction exists, this Court now turns to AMO's motion to dismiss MEBA's complaint. AMO argues, *inter alia*, that this Court should dismiss the instant action because the AFL-CIO constitution requires MEBA to engage in

---

[5] Neither party appears to have mentioned the AFL-CIO constitution in that case. *See id.*

[6] Because this Court concludes that resolution of MEBA's state law claims substantially depends upon interpreting the AFL-CIO constitution, it need not consider AMO's alternative argument that resolution of MEBA's claims would also require analysis of MEBA's CBA with Liberty. (*See, e.g.*, Defs.' Opp'n at 6 ("Because the interference MEBA has alleged is with an existing labor contract, MEBA cannot avoid the conclusion that evaluating this claim will necessitate interpreting that contract regardless of how it styled the cause of action.").)

arbitration as the exclusive method of resolving the instant dispute.  (*See* Defs.' Br. at

15-17.)  In response, MEBA urges this Court to allow the instant lawsuit to move

forward because other avenues of relief are either inadequate or unavailable.  (*See* Pl.'s

Br. at 25-26.)  Because this Court finds that (1) MEBA agreed to abide by the AFL-CIO

constitution and thereby consented to follow alternative dispute resolution procedures

to resolve disputes with other AFL-CIO affiliates, and (2) there is nothing unfair about

requiring MEBA to follow the agreed-to dispute resolution process under the

circumstances presented here, it concludes that AMO's motion to dismiss, as converted

to a motion for summary judgment herein, must be granted.[7]

### A.    Applicable Legal Standards

Although AMO frames its argument regarding the AFL-CIO constitution as a

motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil

Procedure 12(b)(1) (*see* Defs.' Br. at 14-17), AMO's core contention appears to be that

MEBA agreed to arbitrate this dispute and has not done so—*i.e.*, that MEBA has failed

to exhaust the agreed upon arbitration procedures that the AFL-CIO constitution

requires.  (*See id.* at 17 ("MEBA's Complaint is nothing but an attempted end-run

around . . . the AFL-CIO's dispute resolution procedures."); *see also id.* at 16 ("These

dispute resolution procedures are enforceable.  It is well settled that federal labor law

favors enforcement of labor contracts, including union constitutions, providing for

nonjudicial settlement of disputes, and the AFL-CIO Constitution is no exception.").)

Courts in this jurisdiction "have treated a motion premised on the plaintiff's failure to

exhaust a collectively bargained-for grievance-arbitration process as a motion to

---

[7] Because this Court finds that MEBA's failure to exhaust the agreed upon arbitration procedures is dispositive, it does not address AMO's additional argument that MEBA's state law claims lack federal labor law analogues.  (*See* Defs.' Br. at 11-14.)

dismiss for failure to state a claim under Rule 12(b)(6) or for summary judgment under Rule 56." *Am. Postal Workers Union v. USPS*, No. 13-1694, 2014 WL 4203103 at *4 (D.D.C. Aug. 26, 2014) (citing *Noble v. USPS*, 537 F. Supp. 2d 210, 218-219 (D.D.C. 2008)); *see also id.* at *4 n.1 (explaining that while "there is some support for" analyzing a motion to dismiss for failure to exhaust arbitration provisions under Rule 12(b)(1), "treating the motion as one under Rule 12(b)(6) and Rule 56 is more consistent with prior [federal labor] case law").  Consequently, the governing standards for both motions to dismiss and motions for summary judgment are relevant to the matter at hand.

    1.    <u>Legal Standard For A Motion To Dismiss Under Rule 12(b)(6)</u>

In deciding whether to dismiss a complaint for failure to state a claim under Rule 12(b)(6), a "court must treat the complaint's factual allegations—including mixed questions of law and fact—as true and draw all reasonable inferences therefrom in the plaintiff's favor." *Epps v. U.S. Capitol Police Bd.*, 719 F. Supp. 2d 7, 13 (D.D.C. 2010) (citing *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003)).  Generally, a court deciding a Rule 12(b)(6) motion does not consider matters beyond the pleadings.  *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119-120 (D.D.C. 2011).  This means that the court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss[.]"  *Id.* at 119 (internal quotation marks and citation omitted).  For example, a plaintiff's complaint "necessarily relies" on a document when the complaint

"quote[s] from and discuss[es a document] extensively." *W. Wood Preservers Inst. v. McHugh*, 292 F.R.D. 145, 149 (D.D.C. 2013) (citation omitted).

<h4 align="center">2.   Conversion To A Motion For Summary Judgment</h4>

If a court considers materials *outside* of the pleadings, *i.e.* materials that the complaint neither incorporates nor necessarily relies upon, then the court must convert the motion to dismiss into one for summary judgment. *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011) (citing Fed. R. Civ. P. 12(d) ("If, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.")).  District courts have considerable discretion when deciding whether or not to so convert a motion to dismiss. *See Flynn v. Tiede-Zoeller, Inc.*, 412 F. Supp. 2d 46, 50 (D.D.C. 2006).  In exercising this discretion, "the reviewing court must assure itself that summary judgment treatment would be fair to both parties[.]" *Tele-Commc'ns of Key West, Inc. v. United States*, 757 F.2d 1330, 1334 (D.C. Cir. 1985).  Accordingly, the court must either "provide the parties with notice and an opportunity to present evidence in support of their respective positions[,]" *Kim*, 632 F.3d at 719 (citation omitted), or otherwise ensure that the parties "have had a reasonable opportunity to contest the matters outside of the pleadings such that they are not taken by surprise[,]" *Bowe-Connor v. Shinseki*, 845 F. Supp. 2d 77, 86 (D.D.C. 2012) (citation omitted).

In the instant case, the complaint does not contain any attachments; however, both parties have attached outside documents to their briefs regarding AMO's pending motion to dismiss.  AMO's submissions include: (1) an arbitration determination in a prior matter between AMO and MEBA (ECF No. 4-2); and (2) the text of two articles of the AFL-CIO constitution (ECF Nos. 4-3 (Art. XX), 4-4 (Art. I)).  MEBA, too, has

18

submitted outside documents in conjunction with its opposition to AMO's motion to dismiss, including sanctions letters that the AFL-CIO issued against MEBA (ECF No. 7-3). MEBA's complaint does not mention, much less discuss or describe, the AFL-CIO constitution, the prior arbitration determination, or the sanctions letters, and these are not materials upon which the complaint "necessarily relies"; therefore, consideration of these additional materials implicates the conversion rule. This Court now finds that conversion to a motion for summary judgment is appropriate because a fair assessment of AMO's exhaustion argument and MEBA's opposition requires consideration of these additional materials, and because the parties have had a full and fair opportunity to contest these materials in their briefing with respect to both AMO's motion to dismiss and MEBA's motion to remand. *See, e.g.*, *Pintro v. Wheeler*, No. 13-0231, 2014 WL 1315976 at *3-4 (D.D.C. Apr. 2, 2014) (converting motion to dismiss into motion for summary judgment where defendant "repeatedly acknowledge[d] its reliance on materials outside of the pleadings" and plaintiff "attach[ed] several exhibits" to its response, thereby "demonstrat[ing] that [plaintiff] had adequate notice and was given an opportunity to present relevant evidence"); *Estate of Rudder v. Vilsack*, 10 F. Supp. 3d 190, 196 (D.D.C. 2014) (converting motion to dismiss into motion for summary judgment where both parties "had sufficient opportunity to present material evidence beyond the pleadings and contest the discrete, dispositive facts and issues involved in th[e] case").

3. <u>Legal Standard For A Motion For Summary Judgment Under Rule 56</u>

Under Rule 56, a court may grant a motion for summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a).  The court's role in deciding a summary judgment motion is not to "determine the truth of the matter, but instead [to] decide only whether there is a genuine issue for trial." *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) (internal quotation marks and citation omitted).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In determining whether there is a genuine dispute about material facts, a court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *See, e.g.*, *Grosdidier v. Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 23-24 (D.C. Cir. 2013); *see also Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007).  The moving party may successfully support its motion by identifying those portions of the record that it believes demonstrate the absence of a genuine dispute of material fact.  Fed. R. Civ. P. 56(c)(1).  The non-moving party, for its part, must show more than "[t]he mere existence of a scintilla of evidence in support of" its position; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson*, 477 U.S. at 252.  Further, the non-moving party "may not rest upon mere allegations or denials of his pleading but must present affirmative evidence showing a genuine issue for trial." *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (internal quotation marks and citation omitted).

### B.    There is No Genuine Dispute That MEBA Failed To Exhaust The AFL-CIO Constitution's Mandatory Dispute Resolution Procedures

It is well settled that federal courts have the authority to enforce labor contracts under section 301, including agreements to arbitrate. *See Lincoln Mills*, 353 U.S. at 455. In the instant case, AMO asks this Court to find that the terms of the AFL-CIO constitution require affiliates, like MEBA and AMO, to resolve inter-union disputes through the dispute resolution procedures set forth in Article XX, and not in state or federal court, and that MEBA cannot maintain the instant action without first exhausting those procedures, if at all. (*See* Defs.' Br. at 15-17.) When considering labor contracts such as the union constitution at issue in this case, "[t]he interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation." *Allis-Chalmers Corp.*, 471 U.S. at 211. Accordingly, "questions relating to what the parties to a labor agreement agreed . . . must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Id.*; *see also Lingle*, 486 U.S. at 403-404; *Lincoln Mills*, 353 U.S. at 456.

Here, Article XX of the AFL-CIO constitution provides that "[e]ach affiliate shall respect the established collective bargaining relationship of every other affiliate" (Art. XX of the AFL-CIO constitution ("Art. XX"), Ex. B to Defs.' Br., ECF No. 4-3, § 2), and that "[n]o affiliate shall by agreement or collusion with any employer or by the exercise of economic pressure seek to obtain work for its members as to which an established work relationship exists with any other affiliate, except with the consent of

21

such affiliate" (*id.* § 3(a)).  Moreover, and most significantly for present purposes, in
the event of a dispute between affiliates regarding these provisions, Article XX
establishes dispute resolution procedures including mediation, and, if necessary, a
hearing before an "Impartial Umpire[.]"  (*Id.* § 9.)  Furthermore, Article XX specifies
that "[t]he provisions of this Article with respect to the settlement and determination of
disputes of the nature described in this Article shall constitute the *sole and exclusive*
method for settlement and determination of such dispute" (*id.* § 20 (emphasis added)),
and that "[n]o affiliate shall resort to court or other legal proceedings to settle or
determine any [such] disputes" (*id.*).  The parties here do not appear to dispute the
meaning of Article XX; rather, they disagree as to whether that provision should be
held to apply to MEBA's claims in the instant case.

    Where a labor agreement contains "exclusive remedies" for violations, the
Supreme Court has held that complaining parties "must at least attempt to exhaust
exclusive grievance and arbitration procedures" before bringing suit in federal court.
*Vaca v. Sipes*, 386 U.S. 171, 184-185 (1967) (citing *Republic Steel Corp.*, 379 U.S. at
650); *cf. Bush v. Clark Constr. & Concrete Corp.*, 267 F. Supp. 2d 43, 46-47 (D.D.C.
2003) (federal policy encouraging private rather than judicial resolution of labor
disputes "requires that employees attempt to use the grievance procedures previously
agreed upon by the employer and union before resorting to any other form of redress").
There are, however, circumstances under which complainants in labor disputes "may
obtain judicial review . . . despite [their] failure to secure relief through the contractual
remedial procedures."  *Vaca*, 386 U.S. at 185.  One such circumstance is where a
defendant's conduct "amounts to a repudiation of those contractual procedures" and

thereby estops the defendant from insisting on exhaustion.  *Id.*  Another is where an "employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance."  *Id.*

Neither exception applies here.  Indeed, even if this Court were to read MEBA's accusation that AMO omitted all reference to Article XX's arbitration provisions in the Ohio case (Pl.'s Br. at 20) as an allegation that AMO's conduct in that case repudiated Article XX with respect to the instant dispute, that argument fails for the same reasons explained above—namely, AMO claims (and MEBA does not contest) that AMO was not affiliated with the AFL-CIO at the time of the Ohio case and, therefore, Article XX was inapplicable.  Thus, this Court sees no legal basis for MEBA's insistence that it did not need to exhaust Article XX's dispute resolution procedures before proceeding to federal court.

Undaunted, MEBA invokes equitable considerations, asserting that, if exhaustion (*i.e.*, the enforcement of Article XX's arbitration procedures) is required prior to filing suit, MEBA will effectively be without a remedy (Pl.'s Br. at 25) because "MEBA is presently under internal sanctions that prevent the Union from seeking relief under the AFL-CIO Constitution" (*id.* at 19-20).  It appears that these sanctions arose in the context of a prior Article XX dispute resolution proceeding—one in which AMO alleged that MEBA improperly took actions to replace AMO as representative of certain maritime officers and an impartial umpire ruled against MEBA.  (*See* Decision of Impartial Umpire, *In re Seafarers Int'l Union & Nat'l Marine Eng'rs Benevolent Ass'n*, Case No. 06-3 (Nov. 16, 2006), Ex. A to Defs.' Br., ECF No. 4-2, at 3, 6-8.)  When MEBA refused "to disclaim and cease representation of the bargaining unit at issue"

even after its internal appeals were denied, the AFL-CIO apparently notified MEBA that "until such non-compliance is remedied or excused . . . [MEBA] shall not be entitled to file any complaint or appear in a complaining capacity in any proceeding under" Article XX.  (Letter from John J. Sweeney, AFL-CIO President, to Ronald Davis, MEBA President (May 3, 2007) ("Sanctions Letter"), Ex. 2 to Pl.'s Br., ECF No. 7-3, at 2.)

MEBA now contends that these sanctions effectively foreclose relief under Article XX's dispute resolution procedures in the instant case and thus that this Court should allow the instant lawsuit to move forward (*see* Pl.'s Br. at 25 (arguing that, otherwise, "the Union will be left without a viable avenue for legal relief against the AMO Defendants")), but this preclusion argument is wholly unconvincing.  First of all, the AFL-CIO imposed the relevant sanctions on MEBA in May of 2007 (*see* Sanctions Letter at 2), and in the more than seven years that have passed since that time, it appears that MEBA has done little either to remedy the sanctions or, if MEBA felt that the sanctions were unjustified, to contest them.  (*See, e.g.*, Art. XX, § 17 ("Any affiliate that has been found to be in non-compliance and that has been deprived of its rights under this Article may apply for restoration of such rights").  This means that the supposed unavailability of Article XX proceedings in the instant case is largely an impediment of MEBA's own making, and in any event, it is an impediment that MEBA clearly has the power to remove.  (*See id.*; *see also* Sanctions Letter at 2.)

Furthermore, even if this Court takes MEBA at its word that it currently cannot arbitrate under Article XX, MEBA has not proceeded to demonstrate that, under federal law, such impossibility relieves MEBA of its agreement not to "resort to court or other

legal proceedings to settle or determine" inter-union disputes with other AFL-CIO affiliates.  (Art. XX, § 20.)  *Cf.  W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 767 n.10 (1983) ("[I]t is far from clear that the [impossibility] defense is available to [a party] whose own actions created the condition of impossibility." (citation omitted)); 30 Williston on Contracts § 77:1 (4th ed. as updated May 2014) ("If the adverse event [at issue] is due to the fault of the obligor, the offending party cannot be heard to cry that performance is impracticable.").

Also, notably, to the extent that MEBA relies on the Sixth Circuit's decision in *Dougherty v. Parsec, Inc.*, 872 F.2d 766 (6th Cir. 1989), to support its argument that this Court should permit MEBA's lawsuit to proceed (Pl.'s Br. at 24-25), that case has no bearing on exhaustion of exclusive dispute resolution procedures.  To the contrary, the plaintiff in that case exhausted all applicable "contractual grievance and arbitration procedure[s]" before filing suit in federal court.  *Dougherty*, 872 F.2d at 767.  MEBA is correct that, in determining whether section 301 preempted the plaintiff's claims under Ohio law, the *Dougherty* court expressed concern about granting "what effectively amounts to immunity" to "a third party who has allegedly interfered with a labor contract[.]"  *Id.* at 771 (internal quotation marks and citation omitted).  But that concern does not arise in the instant case for the reasons explained above—AMO's conduct is not immune from challenge insofar as it appears that MEBA *could* pursue Article XX proceedings *if* it addressed the longstanding sanctions against it.[8]

---

[8] For this same reason, MEBA's assertion that it cannot now file an unfair labor practice charge with the National Labor Relations Board concerning the instant dispute (Pl.'s Br. at 25)—even if true—is irrelevant.  MEBA has not disputed that it has within its own power the ability to remedy the sanctions and proceed to arbitration under Article XX.  And even assuming arguendo that it is truly impossible for MEBA to arbitrate, that impossibility arose as a result of what MEBA does not contest was its own misconduct, and MEBA has not shown that its failure otherwise to comply with Article XX can be excused under such circumstances.

In sum, this Court finds that there is no genuine dispute regarding whether MEBA was bound to arbitrate under the AFL-CIO constitution, nor is there any question that MEBA failed to "attempt to exhaust" Article XX's "exclusive . . . arbitration procedures" with respect to AMO's alleged wrongdoing here.  *Vaca*, 386 U.S. at 184.  Thus, federal labor policy bars MEBA from maintaining the instant action in this Court and AMO is entitled to summary judgment as a matter of law.

## IV.    CONCLUSION

This Court concludes that resolution of MEBA's claims substantially depends upon interpretation of the AFL-CIO constitution, and thus section 301 preempts the tort claims alleged in MEBA's complaint, such that AMO's removal of MEBA's action to federal court was proper.  Moreover, this Court finds that MEBA did not reasonably attempt to exhaust the AFL-CIO constitution's arbitration procedures, as required by federal law, and therefore cannot maintain the instant lawsuit.  Consequently, Plaintiff's motion to remand is **DENIED**, and Defendants' motion to dismiss, as converted to a motion for summary judgment, is **GRANTED**.


DATE:  December 5, 2014                    *Ketanji Brown Jackson*
                                           KETANJI BROWN JACKSON
                                           United States District Judge